IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MATTHEW FOCHT
ENTERPRISES, INC.,

        **Plaintiff,**

v.

MICHAEL LEPORE,

        **Defendant.**

1:12-cv-04479-WSD

**OPINION AND ORDER**

This matter is before the Court on Defendant Michael Lepore's ("Defendant" or "Lepore") Motion for Summary Judgment on Counts I, II, and VI of the Amended Complaint (the "Motion for Summary Judgment") [7].

**I.    BACKGROUND**

This action centers on a contract entered into between Plaintiff Matthew Focht Enterprises, Inc. ("Plaintiff" or "MFE") and Lepore. Plaintiff alleges that Defendant breached the contract (Count I), tortiously interfered with Plaintiff's contractual relations (Count II), and breached Defendant's fiduciary duty as a faithful agent to Plaintiff (Count IV).[1] [2, at 7-11]. Plaintiff's claims in Counts I

---

[1]    Plaintiff also alleged that Defendant defamed Plaintiff to Plaintiff's customers (Count III) and committed computer theft (Count V). On July 15, 2013,

and II fundamentally are based on three sections of its contract with Defendant: Sections 2.01, 5.08 and 5.09(a).  Plaintiff asserts that these sections individually and collectively prohibit Defendant from competing with Plaintiff or soliciting Plaintiff's customers.  Plaintiff seeks an injunction to enforce these provisions of the contract (Count VI), a declaration that Plaintiff is not required to pay further compensation to Defendant under the contract (Count VII), and an award of punitive damages (Count VIII) and attorney's fees (Count IX).  [Id. at 11-14].

A.     Factual Background

Plaintiff processes credit card, debit card, gift card, loyalty card, leasing and ACH payments, for merchants.  [2, at 17].  Defendant is in the business of marketing services to business entities that accept credit cards and other payment methods for goods and services.  [3-1, at 1].

On March 24, 2009, Plaintiff and Defendant entered into an Independent Contractor Agreement (the "Agreement") [3-1], in which Defendant agreed to market Plaintiff's payment services for a fee.  The Agreement contains various provisions restricting Defendant from engaging in conduct that would compete with Plaintiff's business.

---

the parties stipulated to the dismissal without prejudice of these two claims.  [31].

2

Section 2.01 of the Agreement provides:

During the term of this Agreement, [Lepore], its principals and its affiliates shall not enter into any agreement to solicit Merchants for the merchant-acquiring program of any bank, company, ISO or financial institution other than [MFE], including a direct relationship with any of [MFE's] vendors, without [MFE's] prior written consent, nor shall [Lepore], its principals or any of its affiliates enter into any relationship with any organization or entity that would effect an indirect relationship with any such bank, company, ISO or financial institution.

[3-1, § 2.01].

Sections 5.08 of the Agreement provides:

Without [MFE's] prior written consent (which consent may be withheld in [MFE's] sole and absolute discretion), [Lepore] shall not knowingly cause or permit any of their employees, agents, principals, affiliates, subsidiaries or any other person or entity (i) to solicit or provide services that compete with [MFE's] Services to any Merchant that has been accepted by [MFE]; (ii) to solicit or otherwise cause any Merchant that has been accepted by [MFE] or its vendors to terminate its participation in any of [MFE's] Services; or (iii) to solicit or market services to any Merchant that is already directly or indirectly provided any of [MFE's] Services by [MFE], whether or not such are provided under the terms of this Agreement.  This section shall apply during the term of this Agreement and for five (5) years after any termination, cancellation or expiration of this Agreement.  [Lepore] will remain responsible for resulting damages from such prohibited solicitation.

[3-1, § 5.08].

Section 5.09(a) of the Agreement provides:

During the period that this Agreement is in effect and for the five (5) year period immediately following termination of this Agreement,

3

> [Lepore] shall not directly or indirectly through another entity . . . (iii) call on, solicit or service any customer, referral partner, affiliate, agent, supplier, licensee, licensor, consultant, contractor or other business relation of [MFE] or its respective subsidiaries in order to induce or attempt to induce such person to cease doing business with [MFE] or its subsidiaries, or in any way interfere with the relationship between any such customer, referral partner, affiliate, agent, supplier, licensee, licensor, consultant, contractor or other business relation and [MFE] or its subsidiaries (including, without limitation, making any negative statements or communication about [MFE] or its subsidiaries); or (iv) call on, solicit, or take away or attempt to call on, solicit, or take away any of [MFE's] customers, referral partners, affiliates, agents and vendors on whom [MFE] called or with whom [MFE] became acquainted during its contractual relationship with [MFE], either on its behalf or that of other person, firm, or corporation.

[3-1, § 5.09(a)].

In the spring of 2012, Defendant advised Plaintiff that other credit-card processing firms were compensating their sales personnel at rates higher than what Plaintiff was compensating its salesforce. [2, ¶ 16; 4, ¶ 16]. Plaintiff claims that sometime after this communication, Defendant, in violation of the Agreement, began soliciting Plaintiff's credit-card processing customers for one of MFE's competitors. [1, ¶¶ 17-19, 29-37].

Procedural History

On November 21, 2012, Plaintiff initiated this action in the Superior Court of Cobb County, Georgia (the "Action"). On December 31, 2012, Defendant removed the Action to this Court [1]. Plaintiff filed its Amended Complaint [2] on

4

December 31, 2012, and on February 1, 2013, Defendant filed his Motion for Summary Judgment [7], arguing that Sections 2.01, 5.08 and 5.09(a), the restrictive covenants, are unenforceable under Georgia law.  [7, at 1].

## II.   DISCUSSION

### A.   Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties

"need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    B.    Analysis

        1.    *Enforceability of the restrictive covenants (Count I)*

Plaintiff claims that three provisions of the Agreement prohibit Defendant from engaging in certain competitive conduct. First, Plaintiff claims that Section 2.01 prohibits Defendant, during the term of the Agreement, from entering into any agreement with another company to solicit merchants for a business or entity other

6

than Plaintiff's payment-processing business.  Section 5.08, Plaintiff claims, prohibits Defendant, during the term of the Agreement and for five (5) years after termination, from soliciting or providing services that compete with Plaintiff's services, from interfering with Plaintiff's relationships with its customers, or from soliciting or marketing any service that is directly or indirectly provided to a customer by Plaintiff, including services outside of those covered by the Agreement.  Section 5.09, Plaintiff argues, prohibits Defendant, during the term of the Agreement and for five (5) years after termination, from soliciting or marketing to Plaintiff's customers, or calling or soliciting or taking away any of Plaintiff's "customers, referral partners, affiliates, agents and vendors on whom plaintiff called or with whom Plaintiff became acquainted during its contractual relationship with [Plaintiff]."  Defendant claims these Agreement provisions are unenforceable under Georgia law.[2]

The law in Georgia is well-established that contracts that restrain trade are void as against public policy.[3]  The Georgia Supreme Court, in <u>Atlanta Bread Co.</u>

---

[2]  The parties agree that Georgia law governs the interpretation of the Agreement.

[3]  In 2009, the Georgia General Assembly passed the Restrictive Covenant Act extending the enforceability of non-compete agreements and giving Georgia courts authority to "blue-pencil" otherwise unenforceable non-compete agreements.  This act did not become effective until November 3, 2010, and only applies to contracts entered into since that date.  It thus does not apply here.

Int'l, Inc. v. Lupton-Smith, stated the Georgia policy basis for the law:

> [C]ontracts in unreasonable restraint of trade are contrary to public policy and void, because they tend to injure the parties making them, diminish their means of procuring livelihoods and a competency for their families; tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and expose them to imposition and oppression; tend to deprive the public of services of [people] in the employments and capacities in which they may be most useful to the community as well as themselves; discourage industry and enterprise, and diminish the products of ingenuity and skill; prevent competition and enhance prices, and expose the public to all the evils of monopoly.

679 S.E.2d 722, 724 (Ga. 2009) (quoting Rakestraw v. Lanier, 30 S.E. 735, 738 (Ga. 1898)).

The prohibition does not distinguish between restrictive covenants, sometimes called non-competition covenants, that apply during or after a contract term. See, e.g., Shirk v. Loftis Bros. & Co., 97 S.E. 66 (Ga. 1918) (contract prohibiting employee, "during the term of his employment, and for a period of one year thereafter" from divulging to anyone outside of the employer, knowledge relating to sales prospects acquired by him during term of employment, was no more than reasonably necessary to afford fair protection to interests of employer); Reardigan v. Shaw Indus., Inc., 518 S.E.2d 144 (Ga. Ct. App. 1999) (duration of non-compete provisions that applied "during . . . employment with [company] and for a period ending on December 31st of the calendar year following the calendar

8

year in which your employment terminates" not unreasonable); cf. Atlanta Bread, 679 S.E.2d 722 (restrictive covenant prohibiting franchisee from engaging in any competitive activity during the term of franchise agreement unenforceable as overly broad).[4]

Restrictive covenants in an employment agreement "will be upheld if the restraint imposed is not unreasonable, is founded on a valuable consideration, is reasonably necessary to protect the interest of the party in whose favor it is imposed, and does not unduly prejudice the interests of the public." W.R. Grace & Co. v. Mouyal, 422 S.E.2d 529, 531 (Ga. 1992). "[R]estrictive covenants in contracts for services by independent contractors [are] . . . treated like employee covenants ancillary to employment contracts." Paragon Tech., Inc. v. Infosmart Tech., Inc., 718 S.E.2d 357, 358 (Ga. Ct. App. 2011) (internal quotation marks omitted) (citing Jenkins, 259 S.E.2d at 49-50); accord Northside Hosp., Inc. v. McCord, 537 S.E.2d 697, 699 (Ga. Ct. App. 2000). Georgia courts generally look to three factors to determine whether a restrictive covenant is reasonable: (i) the

---

[4] Most restrictive-covenant cases involve a former employer's action to enjoin post-employment competitive activity that, the employer claims, violates a contract provision. Conduct that is alleged to violate a restrictive covenant that applies during the term of employment is not often litigated because the employer has other remedies, such as termination, to address an employee's work in competition with the employer.

duration of the restrictions, (ii) their territorial coverage, and (iii) the scope of restricted activities.  See id.; Murphree v. Yancey Bro. Co., 716 S.E.2d 824, 827 (Ga. Ct. App. 2011); McAlpin v. Coweta Fayette Surgical Assoc., P.C., 458 S.E.2d 499, 501 (Ga. Ct. App. 1995); Arnall Ins. Agency, Inc. v. Arnall, 396 S.E.2d 257, 259 (Ga. Ct. App. 1990).  In applying these factors, courts also consider "the nature and extent of the trade or business, the situation of the parties, and all the other circumstances."  Mouyal, 422 S.E.2d at 531; see Howard Schultz & Assoc. of the Southeast, Inc. v. Broniec, 236 S.E.2d 265, 267 (Ga. 1977) (restrictive covenants enforceable where strictly limited in time and territorial effect and otherwise reasonable considering the employer's business interest and the effect on the employee).  "Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court."  Mouyal, 422 S.E.2d at 531.

Over the years, Georgia courts have established certain reasonableness standards.  For example, restrictive covenants in an employment or independent contractor services contract are reasonable if (i) the restriction period does not exceed two (2) years following contract termination, and (ii) the restriction only applies to clients the employee actually served during the contract term.  See Murphree, 716 S.E.2d at 827.  Periods of restriction exceeding two years following

a contract's termination are generally unreasonable and unenforceable.  See Swartz Inv., LLC v. Vion Pharm., Inc., 556 S.E.2d 460, 464-65 (Ga. Ct. App. 2001); Greer v. Lifsey, 197 S.E.2d 846, 847-48 (Ga. Ct. App. 1973).  If the person subject to the covenant is prohibited from serving or seeking business from clients that the person did not serve during the contract term, the restrictive covenant must contain a reasonable territorial restriction to be enforceable.  See Carson v. Obor Holding Co., LLC., 734 S.E.2d 477, 482 (Ga. Ct. App. 2012); Trujillo v. Great Southern Equip. Sales, LLC., 657 S.E.2d 581, 584 (Ga. Ct. App. 2008); Hostetler v. Answerthink, Inc., 599 S.E.2d 271, 274 (Ga. Ct. App. 2004); Advance Tech. Consultants, Inc. v. Roadtrac, LLC., 551 S.E.2d 735, 738 (Ga. Ct. App. 2001).  Finally, where a restrictive covenant seeks to prohibit post-termination business activities in which a former employee did not engage and otherwise is unrelated to the former employee's business, the restriction is considered unreasonable.  Mouyal, 422 S.E.2d at 532; accord Carson, 734 S.E.2d at 482.  It is against this backdrop that the Court evaluates the restrictive covenants in the Agreement.

   a. Sections 5.08 and 5.09(a)

    *(i)* *Duration*

  The record shows that both Section 5.08 and Section 5.09(a), besides applying during the term of the Agreement, continue to apply for five years after

11

termination of the Agreement. [3-1, §§ 5.08, 5.09(a)]. It is well-established that a post-termination restriction period greater than two years is facially unreasonable, and on the facts here, the "nature and extent of the trade or business, the situation of the parties, and all the other circumstances" do not support that these provisions otherwise are reasonable. Mouyal, 422 S.E.2d at 531. The duration of Sections 5.08 and 5.09(a) is unreasonable, and for this reason alone, Sections 5.08 and 5.09(a) are not enforceable under Georgia law. Swartz, 556 S.E.2d at 464-65; Greer, 197 S.E.2d at 847-48.

*(ii)   Scope of activities*

The scope of the activities in which Defendant is prohibited from engaging is ill-defined, ambiguous and wide-ranging. In Section 5.08, Defendant is prohibited from "soliciting or providing" services that compete with Plaintiff's services, even though they were not services Defendant provided to Plaintiff, and is further prohibited from soliciting or providing "any service" that is already directly or indirectly provided by Plaintiff to any of Plaintiff's customers, even services outside those covered by the Agreement. The scope of restriction even includes customers with whom Defendant has not had contact and those who contact Defendant unsolicited. Carson, 734 S.E.2d at 482. The scope of activity restriction is uncertain, ambiguous, troublingly overbroad and otherwise

unreasonable.  For this additional reason, the provisions are unenforceable.  See id.; Mouyal, 422 S.E.2d at 532.

### (iii)   Territorial coverage

Sections 5.08 and 5.09(a) also do not contain any territorial limit on the restrictions imposed by the provisions.  A territorial limitation is necessary to give the employee notice of what constitutes a violation of the restrictive covenant and "must specify with particularity the territory in which the employee is restricted." Wiley v. Royal Cup, Inc., 370 S.E.2d 744, 745 (Ga. 1988).  Here, the absence of any territorial limitation fails completely the requirement of territorial specificity, and for this further reason, the Court finds the restrictions in Sections 5.08 and 5.09(a) unreasonable and unenforceable.

All of the reasonableness factors—including duration, territorial coverage and scope of activities—alone and in combination—require the Court to conclude that Sections 5.08 and 5.09(a) are unreasonable and unenforceable.  See Carson, 734 S.E.2d at 482; Trujillo, 657 S.E.2d at 584; Hostetler, 599 S.E.2d at 274; Swartz, 556 S.E.2d at 464-65; Advance, 551 S.E.2d at 738; Greer, 197 S.E.2d at 847-48.

b.     Section 2.01

The Court next considers Section 2.01 of the Agreement, which prohibits Defendant, during the term of the Agreement, from soliciting Plaintiff's customers on behalf of Plaintiff's competitors.[5]

Although Section 2.01 applies only during the period of the Agreement, the general rules of reasonableness apply, and the three factors—duration, territorial coverage and scope of activities—guide the Court in its review. Section 2.01 is durationally limited to the term of the Agreement, but it does not have any territorial or scope-of-activities limitation. The section, in fact, prohibits Defendant from "entering into any relationship with any organization or entity that would effect an indirect relationship with any . . . bank, company, ISO or financial institution" for whom MFE provides services. The provision is ambiguous, and its disturbingly broad reach would, for example, substantially prohibit Defendant from forming any kind of business relationship with any bank, even if the relationship is completely unrelated to the services Defendant provided to MFE. Standing alone,

---

[5]    Plaintiff does not argue that the restrictive covenants are severally enforceable, or that they should be "blue-penciled" to become enforceable under Georgia law. Georgia does not allow blue-penciling of unreasonable provisions of restrictive covenants even if an agreement contains a severability clause.

14

Section 2.01 is facially unreasonable.[6]

Because the Court finds that the Agreement's restrictive covenants are unenforceable in Georgia as a matter of law, Defendant's Motion for Summary Judgment on Plaintiff's breach-of-contract claim is required to be granted.

---

[6] Even if Section 2.01 were not facially unreasonable, Section 2.01 is required to be invalidated as part of the restrictive-covenant provisions because Sections 5.08 and 5.09(a) are unenforceable. Covenants that restrict competition often are evaluated as a single restrictive covenant, even if drafted as separate paragraphs within an agreement, and even if the agreement contains a specific severability clause. See Durham v. Stand-by Labor of Georgia, Inc., 198 S.E.2d 145, 149, 150 (Ga. 1973) (invalidating in entirety an agreement's non-compete provisions that consist of two distinct paragraphs and a specific severability clause); see also Uni-worth Enter., Inc. v. Wilson, 261 S.E.2d 572, 574 (Ga. 1979) (invalidating in entirety an agreement's non-compete provisions that consist of distinct sub-paragraphs, even though two of the four sub-paragraphs would have been independently enforceable).

Plaintiff argues that the restrictive covenants should be enforced because the parties to the Agreement had equal bargaining power, and because Defendant had the "opportunity to consult legal counsel." [13, at 3]. The record does not support that Defendant retained counsel when he entered into the Agreement. Plaintiff does not cite any authority to support that the reasonableness requirement does not apply when a party retains legal counsel or when the two parties have equal bargaining power. See [13, at 5].

Relative bargaining power generally is a factor in determining the nature of the agreement in which the restrictive covenant is included. Once a restrictive covenant is determined to be ancillary to an employment agreement, however, relative bargaining power ceases to be a relevant factor. See Carson, 734 S.E.2d at 482 (applying the three-factor test of duration, territory, and scope of activities only).

2.     *Tortious interference with contractual relations (Count II)*

A claim for tortious interference with contractual relations has four elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or their parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.  Gordon Document Prods., Inc. v. Serv. Tech., Inc., 708 S.E.2d 48, 53 (Ga. Ct. App. 2011); Kirkland v. Tamplin, 645 S.E.2d 653, 655-56 (Ga. Ct. App. 2007); Sommers Co. v. Moore, 621 S.E.2d 789, 791 (Ga. Ct. App. 2005).

Georgia courts define "improper action or wrongful conduct" to mean "conduct wrongful in itself," or conduct that "generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions."  Kirkland, 645 S.E.2d at 656 (citing Sommers, 621 S.E.2d at 791); accord Gordon, 708 S.E.2d at 53.

The record does not support that Defendant engaged in any act that involved predatory tactics or any act that was wrongful in itself.  The Court has found that

16

Sections 2.01, 5.08 and 5.09(a) are unenforceable.  "Fair competition is always legal, and absent a valid noncompete or nonsolicit covenant[,] a former employee may go to customers whom he procured for the old employer and endeavor to persuade them to change their trade to his advantage."  Tom's Amusement Co., Inc. v. Total Vending Servs., 533 S.E.2d 413, 418 (Ga. Ct. App. 2000).  See also Gresham & Assoc., Inc. v. Strianese, 595 S.E.2d 82, 86 (Ga. Ct. App. 2004) (granting summary judgment for the defendant where the defendant took away customers from an old employer).  "[A]n employee is permitted to solicit his former customers on behalf of a new employer."  Contractors' Building Supply, Inc. v. Gwinnett Sash & Door, Inc., 403 S.E.2d 844, 846 (Ga. Ct. App. 1991).

Plaintiff does not allege, and the record does not support, that Plaintiff's customers breached their contracts with Plaintiff.  Even if some set of customers ceased using Plaintiff's service in breach of their contracts, which the record does not show, the undisputed evidence is that Defendant did not engage in any wrongful inducing activity to cause this change in commercial relationships.  Simply persuading someone to breach a contract, absent "predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, [and] abusive civil suits," is not improper conduct that constitutes a tortious interference with contractual relationships.  See Kirk, 645 S.E.2d at 656

(affirming a grant of summary judgment for the defendant where the defendant persuaded a party to breach a contract with the plaintiff).  Simply put, the record does not contain any evidence that any conduct by Defendant was the actual cause of customer defections.

The Court concludes that no reasonable juror could find that Defendant tortiously interfered with Plaintiff's contractual relations with Plaintiff's customers.  See Gordon, 708 S.E.2d at 55 (affirming a grant of summary judgment for the defendant where the plaintiff failed to show that the defendant's solicitation caused the plaintiff's customers to cease doing business with the plaintiff).  Summary judgment is required to be granted on Count Two.

### 3. *Injunctive relief (Count VI)*

Under Georgia law, a "writ of injunction" may issue to restrain "a threatened or existing tort, or any other act of a private individual . . . which is illegal or contrary to equity . . . and for which no adequate remedy is provided at law."  O.C.G.A. § 9-5-1.  "The granting and continuing of injunctions shall always rest in the sound discretion of the judge . . . .This power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to."  O.C.G.A. § 9-5-8.

Here, Plaintiff seeks to enjoin competitive activity that it claims violates the Agreement's restrictive covenants or constitutes tortious interference.  Having found the restrictive covenants to be unenforceable and having granted summary judgment on Plaintiff's tortious-interference claim, there are no grounds for injunctive relief.  Summary judgment is required to be granted on Count VI of the Amended Complaint.

### III.  CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment as to Counts I, II, and VI of the Amended Complaint [7] is **GRANTED**.

**SO ORDERED** this 9th day of September, 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE