IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| MATTHEW FOCHT ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL LEPORE, <br><br> Defendant. | 1:12-cv-4479-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Leave to Amend Counterclaim [32] ("Motion to Amend"), Plaintiff's Motion for Partial Summary Judgment [37] ("Plaintiff's Motion for Summary Judgment"), Defendant's Motion for Summary Judgment as to Plaintiff's Liability on Count One of the Counterclaim [38] ("Defendant's Motion for Summary Judgment"), and Plaintiff's Motion to Supplement Its Summary Judgment Brief [45] ("Motion to Supplement").

**I.   BACKGROUND**

   A.   Procedural History

On November 21, 2012, Plaintiff Matthew Focht Enterprises, Inc. ("MFE" or "Plaintiff") filed this action against Defendant Michael Lepore ("Defendant") in

the Superior Court of Cobb County, Georgia. The case arises from Plaintiff's allegations that Defendant, Plaintiff's former sales representative, breached various contractual and fiduciary duties. On December 31, 2012, Defendant removed the action to this Court on the basis of diversity jurisdiction.

In its Amended Complaint [2] ("Complaint"), Plaintiff asserts nine (9) causes of action: breach of contract based on Plaintiff's violation of restrictive covenants (Count I); tortious interference with contractual relations between Plaintiff and Plaintiff's customers (Count II); defamation (Count III); "unfaithful agent" liability under O.C.G.A. § 10-6-1 (Count IV); computer theft (Count V); liability for injunctive relief prohibiting Defendant from violating the restrictive covenants alleged in Count I (Count VI); liability for a declaratory judgment that Defendant is not entitled to additional compensation from Plaintiff (Count VII); liability for punitive damages (Count VIII); and liability for attorney's fees (Count IX).[1]

On January 7, 2013, Defendant filed his Counterclaim asserting five (5) causes of action against Plaintiff: breach of contract based on Plaintiff's underpayment of commissions (Count I); breach of contract based on Plaintiff's

---

[1] On July 15, 2013, the parties stipulated to the withdrawal of Counts III and V of the Complaint.

failure to pay post-termination compensation (Count II); liability for an accounting related to the post-termination compensation alleged in Count II (Count III); liability for a declaratory judgment that Defendant is entitled to the post-termination compensation alleged in Count II (Count IV); and liability for attorney's fees and costs (Count V).

On February 1, 2013, Defendant moved for summary judgment on Counts I, II, and VI of Plaintiff's Complaint on the ground that the restrictive covenants alleged in those claims are not enforceable. On September 9, 2013, the Court granted Defendant's motion.

On July 16, 2013, a month after the close of discovery, Defendant filed his Motion to Amend seeking leave to assert an additional claim against Plaintiff under the California Privacy Act. Defendant asserts that, in discovery, he learned that Plaintiff "intercepted" and "recorded" telephone calls between Defendant and third-parties, in violation of the California Privacy Act.

On August 5, 2013, the parties filed their respective Motions for Summary Judgment. Plaintiff seeks judgment in its favor on Counts I, II, IV, and VII of its Complaint and on all Counts of Defendant's Counterclaim. Defendant seeks

summary judgment in its favor on Count I of his Counterclaim.[2]

    B.    <u>Relevant Factual Background</u>[3]

Plaintiff is an "independent sales organization" that sells, on behalf of credit card processing companies, credit card processing services to retail merchants. Plaintiff receives a portion of the processing fees charged by the processing companies to the merchants Plaintiff solicits. Plaintiff contracts with sales agents to solicit merchants on its behalf, for which Plaintiff pays the sales agents a commission.

Defendant was a sales agent for Plaintiff. On March 24, 2009, Plaintiff and Defendant entered into an Independent Contractor Agreement (the "Agreement")

---

[2] On November 15, 2013, Plaintiff filed its Motion to Supplement seeking leave to file additional evidence Plaintiff contends is relevant to the Court's consideration of the parties' Motions for Summary Judgment on Count I of Defendant's Counterclaim. The evidence consists of alleged admissions by Defendant that he is not entitled to commissions on certain payments made by Plaintiff's customers.

[3] These facts are taken from the following statements of facts submitted in accordance with Local Civil Rule 56.1: Plaintiff's Statement of Material Facts ("SUMF") [37-2], Defendant's Response to Plaintiff's SUMF [42], Defendant's SUMF [38-2], and Plaintiff's Response to Defendant's SUMF [40]. Where a party disputed a factual assertion contained in a statement of facts, the Court also considered the specific exhibits cited in support of the assertion. See LR 56.1(B)(3), NDGa (providing that the court deems a party's SUMF citation as supportive of the asserted fact "unless the respondent specifically informs the court to the contrary in the response"). Additional factual assertions are considered with the parties' arguments below.

governing, among other things, the parties' relationship and the commissions to be paid by Plaintiff to Defendant. The Agreement was in force for three (3) years. Section 3.01 of the Agreement sets forth the method of calculating Defendant's commission and includes the following provision:

> [Defendant] shall have sixty (60) days from the receipt of any compensation or residuals to notify [Plaintiff] of any errors in payment of compensation or residuals. If [Defendant] does not notify [Plaintiff] within the sixty (60) day time period, [Defendant] shall be deemed to have accepted without question such residual or compensation payment and may not in the future contest the amount it was paid or seek reimbursement for any discrepancies.

(Pl.'s SUMF [37-2] ¶ 27.)[4]

At some point in 2011 or 2012, Defendant decided to discontinue working for Plaintiff. Defendant ultimately began competing, in various forms, with Plaintiff in the sale of credit card processing services.[5]

## II. MOTION TO AMEND

In his Motion to Amend, Defendant claims that he recently discovered that Plaintiff "intercepted" and "recorded" certain telephone calls between Defendant

---

[4] The Agreement also contains various restrictive covenants prohibiting Defendant from engaging in competition with Plaintiff. In its September 9, 2013, Order [43], the Court found that the restrictive covenants are not enforceable.

[5] The parties dispute the facts surrounding Defendant's competitive activities and the significance of the activities. The Court considers the specific disputed facts below.

5

and third-parties. On the basis of this discovery, Defendant seeks leave, under Rule 15(a) of the Federal Rules of Civil Procedure, to file an amended counterclaim to add a claim against Defendant for violation of the California Privacy Act.

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Id. "It is [also] appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation." Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (Former 5th Cir. Nov. 1981).

Plaintiff's Complaint and Defendant's original Counterclaim in this matter only assert claims arising out of alleged breaches of the Agreement. Defendant's proposed California Privacy Act claim is wholly unrelated to the pending claims in this case. Discovery in this matter is closed, one summary judgment motion has

been filed and decided, cross-motions for summary judgment have been filed and are decided in this Order, and the case is ready to proceed to trial. The addition at this late date of Defendant's proposed unrelated claim would cause significant delay in the resolution of this matter. For this reason, and because Defendant has not asserted that he will face any prejudice in litigating his California Privacy Act claim in a separate action, Defendant's Motion to Amend is denied.

### III.   MOTIONS FOR SUMMARY JUDGMENT

#### A.   Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this

burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.   Analysis

1.   *Counts I and II of Plaintiff's Complaint*

Plaintiff seeks summary judgment on Counts I and II its Complaint, alleging that Defendant breached covenants not to compete in the Agreement and tortiously interfered with Plaintiff's contracts with third-parties. Because the Court already has granted summary judgment to Defendant on Counts I and II, Plaintiff's Motion as to these claims is moot and is denied on that basis.

2.   *Count IV of Plaintiff's Complaint*

Plaintiff next seeks summary judgment on Count IV its Complaint, alleging that Defendant is liable as an "unfaithful agent" under O.C.G.A. § 10-6-31. Section 10-6-31 provides:

> An agent who shall have discharged his duty shall be entitled to his commission and all necessary expenses incurred about the business of his principal. If he shall have violated his engagement, he shall be entitled to no commission.

Plaintiff asserts that an agent "violate[s] his engagement" under O.C.G.A. § 10-6-31 by breaching fiduciary duties owed to the principal.

Plaintiff cites four instances it contends demonstrate Defendant's breach of his fiduciary duties:

> (1)   Email communications with Dr. Rahim Kanji, an MFE client, in November 2011 about switching his processing to Clearant from MFE; . . .

(2) Forwarding an MFE client, Chiro One Source, a flyer for his new processing firm, in November 2011; . . .

(3) In February 2012, trying to work with the Uniform Retailers Association to market Clearant credit-card processing services to its members, rather than MFE's services; . . . and

(4) Email communications with an MFE client, Shop Anatomical, in March 2009 concerning setting up the account with Lepore's "new company."

(Pl.'s Br. [37-1] at 14–15.)[6]

Defendant does not dispute that O.C.G.A. § 10-6-31 imposes liability on an agent for breach of a fiduciary duty and does not dispute that the four examples, as described by Plaintiff and if true, could constitute breaches. Defendant argues that Plaintiff has mischaracterized the four examples and that the record does not support them. He concludes by arguing that there is at least a genuine dispute over the facts surrounding the examples.

To support the first example—switching Dr. Kanji's business from MFE to Defendant—Plaintiff cites paragraph 49 of its SUMF, which in turn cites pages 92 to 94 of Defendant's deposition transcript. The cited deposition excerpt shows that

---

[6] In its Reply Brief, Plaintiff purports to quote a portion of Defendant's deposition in which Defendant allegedly states that he sent merchants applications for payment processing services provided by companies other than Plaintiff. This factual assertion is not contained in Plaintiff's opening brief or in a statement of material facts. Defendant has not been given the opportunity to respond to the assertion, and the Court does not consider it. See LR 56.1(B), ND Ga.

Dr. Kanji was, at an unspecified time, a customer of Plaintiff's competitor Clearant. (Pl.'s Tab E [37-11] at 2–4.) The emails discussed in the deposition, which are not in the record, appear to reference a phone call that Defendant arranged between Dr. Kanji and Clearant to discuss Dr. Kanji's account with Clearant. (See id.) The deposition excerpt also shows that Defendant was "not sure" whether Dr. Kanji ever was a customer of Plaintiff. (Id. at 4.) The excerpt does not show that Defendant attempted to "switch" Dr. Kanji's business from Plaintiff to Clearant, or any other competitor. The Court finds that the record does not support Plaintiff's assertion that Defendant attempted to "switch" Dr. Kanji's business from Plaintiff to Clearant in November 2011.

To support the second example—the forwarding of Defendant's flyer—Plaintiff cites paragraph 50 of its SUMF, which in turn cites pages 98 to 101 of Defendant's deposition transcript. The cited deposition excerpt shows that, on November 29, 2011, Defendant emailed a "flyer" to the owner of MFE client Chiro One Source ("Chiro") and to the son of Chiro's owner. (Id. at 8–11.) Defendant testified that the flyer, which is not in the record, contains the logos of Chiro and of Rel Processing.[7] (Id. at 9.) The deposition excerpt does not describe the contents

---

[7] Although not clear from the cited deposition excerpt, Defendant does not dispute that Rel Processing is a competitor of Plaintiff founded by Defendant.

11

of the flyer or the type of business advertised in the flyer.  Defendant testified that he sent the flyer in response to the owner's and son's request, because Rel Processing and the son intended to work together on a business venture.  (Id. at 9–10.)  Defendant testified that he does not know if the flyer was actually distributed.  (Id.)  The Court finds that the record is not sufficient to show that the flyer was "for" Defendant's processing firm or that the flyer shows that Defendant solicited Chiro, or any other MFE client.

To support the third example—marketing Clearant's, instead of MFE's, services to the Uniform Retailers Association—Plaintiff cites paragraph 51 of its SUMF, which in turn cites pages 111 to 112 and Exhibit 13 of Defendant's deposition transcript.  The cited excerpt and exhibit, an email, show that, in February 2012, Defendant was attempting to create a "partnership" between MFE competitor Clearant and an organization called the Uniform Retailers Association ("URA").  (Id. at 21–22, 27.)  The scope or purpose of this attempted "partnership" is not clear from the cited evidence, but it appears that Defendant's intention may have been for URA to encourage its members to buy credit card processing services from Clearant.  Defendant testified that Plaintiff was not capable of providing services to URA's members because of the type of equipment the URA members used in processing payments.  (Id. at 21–22.)  The Court finds that the

record does not support that Plaintiff was able to sell its services to URA members and that the record therefore is not sufficient to show that Defendant marketed Clearant's services to URA "rather than" Plaintiff's.

To support the fourth example—soliciting MFE client Shop Anatomical to Defendant's business in March 2009—Plaintiff cites paragraphs 52 and 53 of its SUMF.  The cited paragraphs concern the business of an unnamed MFE client in March 2012.  They do not pertain to a client named Shop Anatomical and do not reference March 2009 emails.  The Court finds that the record does not support Plaintiff's fourth example.

Because the Court finds that the record is not sufficient to support any of Plaintiff's "examples" of Defendant's alleged breaches of fiduciary duties, Plaintiff's Motion for Summary Judgment on Count IV of its Complaint is required to be denied.[8]

### 3. *Count I of Defendant's Counterclaim*

Both Plaintiff and Defendant seek summary judgment on Count I of

---

[8] Plaintiff's Motion for Summary Judgment on Count VII of the Complaint and on Counts II through V of Defendant's Counterclaim (the "Dependent Claims") is based entirely on Plaintiff's argument that it is entitled to summary judgment on Counts I, II, and IV of the Complaint.  The Court having found that Plaintiff is not entitled to summary judgment on Counts I, II, and IV, Plaintiff's Motion for Summary Judgment on the Dependent Claims is denied.

Defendant's Counterclaim, asserting breach of contract. In Count I of the Counterclaim, Defendant alleges that he was underpaid by Plaintiff because certain of his commissions from Plaintiff were not calculated in accordance with the parties' Agreement.

Plaintiff asserts that Defendant's underpayment claims are barred because Defendant failed to comply with Section 3.01 of the Agreement. Section 3.01 provides:

> [Defendant] shall have sixty (60) days from the receipt of any compensation or residuals to notify [Plaintiff] of any errors in payment of compensation or residuals. If [Defendant] does not notify [Plaintiff] within the sixty (60) day time period, [Defendant] shall be deemed to have accepted without question such residual or compensation payment and may not in the future contest the amount it was paid or seek reimbursement for any discrepancies.

(Pl.'s SUMF [37-2] ¶ 27.) Plaintiff specifically asserts that, before the filing of his Counterclaim more than 60 days after receiving his last commission payment, Defendant did not provide Plaintiff with notice of "any errors in payment of compensation or residuals."

Defendant does not dispute the validity or enforceability of the 60-day notice requirement in Section 3.01, and Defendant does not dispute that he has the burden to establish compliance with the requirement. See, e.g., Pillar Dev., Inc. v. Fuqua Constr. Co., 645 S.E.2d 64, 67–68 (Ga. Ct. App. 2007) (recognizing as a valid

14

condition precedent to suit a contract's requirement that aggrieved party provide notice of breach to a defaulting party); Holt & Holt, Inc. v. Choate Constr. Co., 609 S.E.2d 103 (Ga. Ct. App. 2004) (enforcing contract provision requiring arbitration of defaults within 30 days of breach); see also Sellers v. City of Summerville, 67 S.E.2d 137, (Ga. 1951) ("[W]hen a plaintiff's right to recover on a contract depends upon a condition precedent to be performed by him, he must allege and prove the performance of such condition . . . ."). Defendant argues that he complied with the requirement because he "complained from time to time that his commissions seemed too low." (Def.'s Opp'n Br. [41] at 10 (quoting Pl.'s Br. [37-1] at 3).) The Court disagrees. Plaintiff's occasional "complaints" regarding commissions that "seemed too low" do not satisfy the plain requirement of Section 3.01 that Defendant notify Plaintiff of compensation errors. Cf. Clow Corp. v. Metro Pipeline Co., 442 F. Supp. 583, 588–90 (N.D. Ga. 1977) (holding that party failed to provide notice of breach as required under the UCC because aggrieved party's "conversation" with defaulting party about general problems with goods did not include request for credit or indication that aggrieved party believed there to be a breach). Moreover, Plaintiff has not submitted any evidence showing that any of his "complaints" were made within 60 days of the receipt of a claimed

15

erroneous payment.[9]  Because the record does not contain evidence that Defendant complied with Section 3.01 of the Agreement, Defendant's Motion for Summary Judgment is required to be denied, and Plaintiff's Motion for Summary Judgment as to Count I of the Counterclaim is granted.[10, 11]

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Leave to Amend Counterclaim [32] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary

---

[9] In his Response to Plaintiff's SUMF, Defendant states that he "questioned" his commissions "on an almost monthly basis."  (Def.'s Resp. SUMF [42] ¶ 46.)  Neither the SUMF response nor the deposition excerpt cited in support, however, shows that Defendant addressed his "questions" to Plaintiff on a monthly basis or that Defendant ever provided Plaintiff with notice of an error in his commissions.  (See id.; Def.'s Ex. 9 [42-10] at 1.)

[10] Defendant appears to argue further that he should be excused from the requirement of Section 3.01 because the commission reports accompanying his payments were lengthy and difficult to decipher.  Defendant has not cited any provision in the Agreement requiring Plaintiff to have furnished Defendant with *any* commission reports.  Moreover, Defendant has not cited, and the Court is not aware of, any authority excusing performance of a condition precedent on this basis.

[11] Because the Court grants Plaintiff's Motion for Summary Judgment with respect to Count I of the Counterclaim based on the current record, Plaintiff's Motion to Supplement is moot and is denied on that basis.

16

Judgment [37] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** with respect to Count I of Defendant's Counterclaim. It is **DENIED** with respect to all other claims.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Plaintiff's Liability on Count One of the Counterclaim [38] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement Its Summary Judgment Brief [45] is **DENIED AS MOOT**.

**SO ORDERED** this 21st day of March, 2014.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE