**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **MATTHEW FOCHT ENTERPRISES, INC., a Georgia corporation,** | |
| **Plaintiff,** | |
| **v.** | **1:12-cv-4479-WSD** |
| **MICHAEL LEPORE, an individual,** | |
| **Defendant.** | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Matthew Focht Enterprises, Inc.'s ("MFE" or "Plaintiff") Motion in Limine [60] ("MFE Motion"), and Defendant's Motion in Limine [61] ("Lepore Motion").

## I.      BACKGROUND

### A.      Procedural Background

On November 21, 2012, Plaintiff filed this action against Defendant Michael Lepore ("Lepore" or "Defendant") in the Superior Court of Cobb County, Georgia. The case arises from Plaintiff's allegations that Defendant, Plaintiff's former sales representative, breached various contractual and fiduciary duties.  On December 31, 2012, Defendant removed the action to this Court on the basis of diversity jurisdiction.

In its Amended Complaint [2] ("Complaint"), Plaintiff asserted nine (9) causes of action:  breach of contract based on Plaintiff's violation of restrictive covenants (Count I); tortious interference with contractual relations between Plaintiff and Plaintiff's customers (Count II); defamation (Count III); "unfaithful agent" liability under O.C.G.A. § 10-6-1 (Count IV); computer theft (Count V); liability for injunctive relief prohibiting Defendant from violating the restrictive covenants alleged in Count I (Count VI); liability for a declaratory judgment that Defendant is not entitled to additional compensation from Plaintiff (Count VII); liability for punitive damages (Count VIII); and liability for attorney's fees (Count IX).[1]

On January 7, 2013, Defendant filed his Counterclaim, asserting five (5) causes of action against Plaintiff:  breach of contract based on Plaintiff's underpayment of commissions (Count I); breach of contract based on Plaintiff's failure to pay post-termination compensation (Count II); liability for an accounting related to the post-termination compensation alleged in Count II (Count III); liability for a declaratory judgment that Defendant is entitled to the post-termination compensation alleged in Count II (Count IV); and liability for attorney's fees and costs (Count V).

---

[1] On July 15, 2013, the parties stipulated to the withdrawal of Counts III and V of the Complaint.

On September 9, 2013, the Court entered its Order [43] on Defendant's Motion for Summary Judgment on Counts I, II, and VI of the Amended Complaint. The Court granted summary judgment on these counts.

On March 21, 2014, the Court entered its Order [49] on Plaintiff's Motion for Partial Summary Judgment on Counts I, II, IV, and VII of the Amended Complaint and Defendant's Motion for Summary Judgment as to Plaintiff's liability on Count I of the Counterclaim.  The Court granted Plaintiff's Motion for Partial Summary Judgment regarding Count I of the Counterclaim and denied it with respect to Counts I, II, IV, and VII.  The Court denied Defendant's Motion for Summary Judgment on Plaintiff's liability as to Count I of the Counterclaim.

On June 3, 2014, the Court set this case for trial on July 28, 2014.  In the Order setting trial, the Court set forth a schedule for filing pre-trial motions, including motions in limine.

On June 17, 2014, Plaintiff timely filed its MFE Motion, asserting that 1) Defendant be barred from introducing damages in excess of $10,000; and 2) Defendant be barred from arguing that he did not owe a fiduciary duty to Plaintiff.  On June 17, 2014, Defendant filed his Lepore Motion, asserting, among other arguments, that Plaintiff be barred from arguing that the Agreement limits Defendant's damages to $10,000.  (Lepore Motion at 5-6).  On July 1, 2014,

Defendant filed his Response [62] to the MFE Motion, and Plaintiff filed its

Response [63] to the Lepore Motion.  On July 15, 2014, Plaintiff filed its Reply

[70] in support of its MFE Motion, and Defendant filed his Reply [69] in support

his Lepore Motion.  All of the pleadings addressed Plaintiff's limitation of liability

argument.

      B.    <u>Relevant Factual Background</u>

Plaintiff is an "independent sales organization" that sells, on behalf of credit

card processing companies, credit card processing services to retail merchants.

Plaintiff receives a portion of the processing fees charged by the processing

companies to the merchants Plaintiff solicits.  Plaintiff contracts with sales agents

to solicit merchants on its behalf, for which Plaintiff pays the sales agents a

commission.

Defendant was a sales agent for Plaintiff.  On March 24, 2009, Plaintiff and

Defendant entered into an Independent Contractor Agreement [37-5]

("Agreement") governing, among other things, the parties' relationship and the

commissions to be paid by Plaintiff to Defendant.  The Agreement was in force for

three (3) years.

Section 5.04 of the Agreement contains a limitation of liability provision,

which states, in relevant part, that:

> UNDER NO CIRCUMSTANCES SHALL [PLAINTIFF'S] TOTAL LIABLITY TO [DEFENDANT] OR ANY THIRD PARY ARISING OUT OF OR RELATED TO THIS AGREEMENT EXCEED TEN THOUSAND DOLLARS ($10,000) REGARDLESS OF WHETHER ANY ACTION OR CLAIM IS BASED ON WARRANTY, CONTRACT, TORT OR OTHERWISE.

(Agreement at § 5.04) (emphasis in original).

Section 4.06 of the Agreement entitles Defendant to receive post-termination

commissions, and states:

> Unless this Agreement is terminated for the reasons set forth in sections 4.02, 4.03, 4.04, or 4.06 or after any termination [Defendant] commits a material breach of the terms of this Agreement that survive the termination of the Agreement, [Plaintiff] agrees to make payments to [Defendant] as set forth in this Agreement for any Merchant obtained by [Plaintiff] through [Defendant's] performance of this Agreement for any period of time during which such Merchant continues to generate revenue to [Plaintiff].  [Plaintiff] shall have no further obligation to make any payments to [Defendant] under this Agreement once [Defendant's] monthly payment falls below three hundred dollars ($300.00).

(Agreement at § 4.06).[2]

---

[2] The Court notes that § 4.07 of the Agreement provides that Plaintiff is not obligated to provide compensation to Defendant if Defendant defaults under the Agreement or commits a material breach of the Agreement.

Section 6.13 of the Agreement contains a provision concerning attorney's fees, and states:

> Should suit or arbitration be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs, including expert witness fees and fees on any appeal.

(Agreement at § 6.13).

Section 1.05 of the Agreement states, in relevant part, that

> Neither [Defendant] nor [Defendant's] employees, consultants, contractors or agents are agents . . . of [Plaintiff], nor do they have any authority to bind [Plaintiff] by contract or otherwise to any obligation.  [Plaintiff] will not represent to the contrary, either expressly, implicitly, by appearance or otherwise.

(Agreement at § 1.05).

## II.    DISCUSSION

### A.    Limitation of Liability

Section 6.12 of the Agreement states that it shall be "governed by and construed in accordance with the laws of the State of Georgia . . . ."  (Agreement at § 6.12).

Under Georgia law, the "cardinal rule of contract construction is to ascertain the intention of the parties."  Lay Bros v. Golden Pantry Food, 616 S.E.2d. 160, 163 (Ga. App. 2005) (citations omitted); see also Johnson v. U.S. Fidelity & Guaranty Co., 91 S.E.2d 779, 782 (Ga. App. 1956).  A contract must be considered

as a whole document.  Lay Bros., 616 S.E.2d. at 163 ("the whole instrument . . .

must be considered").  Courts should "avoid any construction that renders portions

of the contract meaningless."  RLI Ins. v. Highlands of Ponce, L.L.C., 635 S.E.2d

168, 172 (Ga. App., July 5, 2006) (citations omitted).

> Contract interpretation under Georgia law is a stepped process:
>
> (1) Is the language clear and unambiguous?  If it is, the court simply enforces the contract according to its terms.  If it is ambiguous, (2) the court must apply the rules of contract construction to resolve the ambiguity.  If the ambiguity cannot be resolved, (3) the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

Harris v. Distinctive Builders, Inc., 549 S.E.2d. 496, 498-99 (Ga. App. 2001); see

also Hall v. Ross, 616 S.E.2d. 145, 147 (Ga. App. 2005).

Georgia law emphasizes the importance of construing a contract by its

terms.  "[N]o construction is required or even permissible when the language

employed by the parties is plain, unambiguous, and capable of only one reasonable

interpretation."  Cox v. Athens Regional Medical Center, 631 S.E.2d 792, 796 (Ga.

App. 2006) (emphasis added) (citations omitted).  A contract is not ambiguous

"unless and until an application of pertinent rules of interpretation leaves it

uncertain to which of two or more possible meanings represents the true intention

of the parties."  Lay Bros, 616 S.E.2d. at 163.  Contractual terms are to be

accorded their plain and ordinary meaning, and technical terms of art are accorded their meaning in the art.  <u>Johnson</u>, 91 S.E.2d at 783.

The rules of contract construction in Georgia are dictated by statute.  In relevant part, Georgia Code § 13-2-2 lays out the following principles "used in arriving at the true interpretation of contracts":

> (1) Parol evidence is inadmissible to . . . vary a written contract . . . .
>
> (2) Words generally bear their usual and common signification; but technical words, or words of art . . . will be construed, generally, to be used in reference to [their] particular meaning. . . .
>
> (4) The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part;. . . .

O.C.G.A. § 13-2-2.

Limitation-of-liability clauses are valid and binding under Georgia law.  <u>See</u> <u>Monitronics Int'l, Inc. v. Veasley</u>, 746 S.E.2d 793, 802 (2013).  Nevertheless, to be enforceable, limitation-of-liability clauses "must be explicit, prominent, clear and unambiguous."  <u>See</u> <u>id.</u>  Any ambiguity in a limitation-of-liability clause will be construed against the drafter.  <u>See</u> <u>id.</u>

Plaintiff asserts that the meaning of § 5.04 is clear and that its total liability, inclusive of all commissions and attorneys' fees and cost, is capped at $10,000.

Defendant asserts that this interpretation would render § 4.06 meaningless, and render 6.13 illusory, as it would only apply if Plaintiff was the prevailing party.

      1.    <u>Section 4.06</u>

The Court agrees with the interpretation of § 5.04 as applied to § 4.06 as argued by Plaintiff. Section 4.06 delineates the payments that Plaintiff agreed to pay to Defendant if the Agreement is terminated. Section 4.06, however, is subject to the limitation-of-liability provision expressed in § 5.04. Section 5.04 expressly limits Plaintiff's potential liability should it breach the Agreement, including a breach of § 4.06. These provisions do not conflict, and, read together, are unambiguous. Where Plaintiff breaches § 4.06, and suit is brought against it for the breach, its liability is capped at $10,000. (Agreement at § 5.04). To interpret § 5.04 otherwise would render it meaningless as a limitation on Plaintiff's liability.[3] <u>Monitronics Int'l</u>., 746 S.E.2d at 802. The words used in it are ordinary, not technical, and plain. <u>Lay Bros</u>, 616 S.E.2d. at 163; O.C.G.A. § 13-2-2. They

---

[3] The Court notes that the limitation-of-liability provision in § 5.04 follows those provision of the Agreement that pertain to the commercial performance owed by the parties to each other. These are the provisions which, in the Court's experience, are likely to be claimed to be breached in an action filed by the parties.

are explicit, prominent, and capable of only one reasonable interpretation.  Cox,

631 S.E.2d at 796; Monitronics Int'l., 746 S.E.2d at 802.[4]

Defendant asserts that the limitation on his potential damages essentially

"nullifies" his right to recovery under § 4.06.  The Court disagrees.  Section 5.04

simply limits Defendant's ability to recover damages for breach of the Agreement,

including a breach of § 4.06.  That is the usual and essential purpose of a

limitation-of-liability provision.  Cf. Stefan Jewelers, Inc. v. Electro-Protective

Corp., 288 S.E.2d 667 (1982) (limitation-of-liability provision prevented plaintiff

from seeking $1,150,000 in damages).  The Court finds §§ 4.06 and 5.04, as

applied to each other, to be plain, unambiguous, and capable of only one

reasonable interpretation -- that any damages Defendant may be entitled to under

§ 4.06 are limited to $10,000 by § 5.04, and this interpretation gives logical,

commercial meaning to the Agreement as a whole.  See Lay Bros, 616 S.E.2d. at

163; Harris, 549 S.E.2d at 498-99; O.C.G.A. § 13-2-2.[5]  The Court thus grants

---

[4] If Defendant sought to exclude a claim for fees under § 4.06, he could have
negotiated to exempt § 4.06 from the § 5.04 limitation provision.

[5] The limitation-of-liability provision makes commercial sense in light of § 4.07.
This section limits Plaintiff's obligation to compensate Defendant if Defendant
defaults or breaches the Agreement.  This shows the parties agreed that there may
well be a significant economic effect and limitation on Defendant as a result of his
default under or breach of the Agreement.  That is, termination of commissions
under § 4.07 could be substantial, and the benefit to Plaintiff could be

Plaintiff's motion to the extent that Defendant seeks to introduce evidence of unpaid commissions in excess of $10,000.

        1.    Section 6.13

     The Court disagrees with Plaintiff's interpretation of § 5.04 as applied to § 6.13.  Section 6.13 provides the "prevailing party" with the opportunity to recover its attorneys' fees, costs (including expert witness fees), and any fees on appeal.  (Agreement at § 6.13).  That is, unlike § 5.04, which is a plain, unambiguous limitation on only Plaintiff's potential liability in the event of a suit, § 6.13 allows for the recovery of reasonable fees and costs to Plaintiff or Defendant or, conceivably, both, in the event of a suit.  Defendant thus could "prevail" in his claim for commissions, even though capped at $10,000 by § 5.04, and be allowed, as the prevailing party on his claim, to recover his reasonable fees and costs.[6]  Sections 5.04 and 6.13 thus do not conflict, and, read together, are unambiguous.

     Even if ambiguous, the Court would be required to apply the rules of contract construction to resolve any alleged ambiguity.  See Harris, 549 S.E.2d at

---

considerable.  This underscores that the parties agreed to this limitation of liability in their relationship and supports that they agreed to an ultimate cape of $10,000.

[6] Reasonableness will have to be determined in the context of the claim and its success, including whether it was reasonable to incur fees and expenses to recover an amount subject to the § 5.04 limitation.

498-99.  In doing so, the Court is obligated to choose a construction that would uphold the contract in whole and in every part, and otherwise is required to "avoid any construction that renders portions of the contract meaningless."  See O.C.G.A. § 13-2-2(4); RLI Ins., 635 S.E.2d at 172.  The Court must also construe any ambiguity against Plaintiff.  See Monitronics Int'l, 746 S.E.2d at 802.

Applying these construction principles, the Court concludes that Plaintiff's argument that recovery under § 6.13 is subject to the cap established by § 5.04 would unreasonably erode the meaning of the phrase "prevailing party."  Plaintiff's interpretation of the interplay between §§ 5.04 and 6.13 would essentially rewrite § 6.13 to state:

> Should suit or arbitration be brought to enforce or interpret any part of this Agreement, [MFE, but not Lepore,] shall be entitled to recover its reasonable attorneys' fees and costs, including expert witness fees and fees on any appeal.

Applying § 5.04 to limit the attorneys' fees and costs authorized by § 6.13 would render the phrase "prevailing party" meaningless, and would not uphold § 6.13.  The Court thus finds that Defendant's ability to recover reasonable attorneys' fees and costs pursuant to § 6.13 is not limited by § 5.04.

B.    Fiduciary Duty

Plaintiff moves to bar Defendant from arguing that he did not owe a fiduciary duty to Plaintiff, because Plaintiff claims that it is undisputed that

Defendant was Plaintiff's agent, and, even if not, Georgia law imposed a fiduciary duty on Defendant.  (MFE Motion at 2-5).  Plaintiff asserts that it presented this issue to the Court in its Motion for Summary Judgment [37-1] and that Defendant failed to contest it and thus the argument is barred at trial.  Plaintiff further asserts that the Court's March 31, 2014, Order [49] on Plaintiff's Motion for Summary Judgment stated that "Defendant was a sales agent for Plaintiff," and suggests that the Court did not address whether Defendant was Plaintiff's agent because Defendant did not dispute this issue.  The Court disagrees.

In his response [41] to Plaintiff's Motion for Summary Judgment, Defendant asserts that he was not an agent of Plaintiff's, and references § 1.05 of the Agreement, which states that "[n]either [Defendant] nor [Defendant's] employees, consultants, contractors or agents are agents . . . of [Plaintiff] . . . ."  (Doc. 41 at 7; Agreement at § 1.05).  The Court, in its March 31, 2014, Order, did not address whether an agency relationship existed between Plaintiff and Defendant because it was not necessary in his Order to address this issue.  The Court addressed each of the four examples Plaintiff provided to establish breaches of a fiduciary duty and rejected each of them.  (March 31, 2014, Order, at 9-13).  A determination of whether an agency relationship existed was not necessary for the Court to make its decision on the issue presented in Plaintiff's Motion for Summary Judgment.

Plaintiff asserts that, even if an agency relationship did not exist, the Court should still find that Defendant owed Plaintiff a fiduciary duty.  (MFE Motion at 3-4).  Georgia law provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

O.C.G.A. § 23-2-58.  Whether such a confidential relationship under Georgia law existed, and whether an agency relationship existed between the parties, are facts determined to be decided by the jury at trial.  See Johnson v. Unique Vacations, Inc., 498 F. App'x 892, 894 (11th Cir. 2012) ("In general, the existence of an agency relationship is one for the jury to decide as the triers of fact.").

**III.    CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion in Limine [60] is **GRANTED IN PART and DENIED IN PART**.  It is **GRANTED** with respect to Defendant's claim for unpaid commissions in excess of ten thousand dollars ($10,000).  The Court will, at the pretrial conference set for July 22, 2014, consider what evidence concerning Defendant's alleged unpaid commissions might be allowed at trial.  It is **DENIED** with respect to Defendant's introduction of his

attorneys' fees and costs, including expert witness fees, as permitted by § 6.13 of the Agreement.  It is **DENIED** with respect to Defendant's introduction of evidence that no agency relationship existed and with respect to evidence that Defendant did not owe a fiduciary duty to Plaintiff.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine [61] is **DENIED** with respect to its request that the Court find that the Agreement does not limit Defendant's damages to $10,000.

**SO ORDERED** this 18th day of July, 2014.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

15